**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

JAN 03 2011

DAVID CREWS, CLERK
By X.Houston
Deputy

**ALFA INSURANCE CORPORATION**                                    **PLAINTIFF**

**VS.**                                    CAUSE NO. _1:11cv1-D-D_

**TIMOTHY REEDER AND**                                    **DEFENDANTS**
**ANDREA REEDER**

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, the Plaintiff, Alfa Insurance Corporation ("Alfa"), by and through counsel, and pursuant to Federal Rule of Civil Procedure 57, Title 28 U.S.C. Section 2201, and other applicable authorities, hereby files this, its Complaint for Declaratory Judgment, stating to the Court the following:

1.      This is an action to determine rights, duties and obligations of the parties under a policy of Homeowner's insurance issued by the Plaintiff to the Defendants.

## PARTIES

2.      Alfa Insurance Corporation is a company based in Alabama which is registered to do business in the State of Mississippi and is doing business in the State of Mississippi. Alfa's Principal place of business is 2108 East South Boulevard, Montgomery, Alabama 36191-0001.

3.      The Defendants, Timothy Reeder and Andrea Reeder, are adult resident citizens of Lee County, Mississippi, with a residence of 5507 WaterPointe Cove, Tupelo, Mississippi 38801.

1

## JURISDICTION AND VENUE

4.     As required by 28 U.S.C. Section 1332 there is complete diversity between Alfa

and the Defendants, and the amount in controversy exceeds $75,000.00 as the limits of the

insurance policy in question exceeds the jurisdictional limit.

5.     Venue is proper in this district under 28 U.S.C. Section 1391(a) because the

Defendants are residents of a county within the Eastern Division of the United States District

Court for the Northern District of Mississippi.

## FACTS

6.     At all times relevant to this action, the Defendants were insureds, and their home

at 5507 WaterPointe Cove, Tupelo, Mississippi 38801 was insured, under a homeowners policy

issued to Defendants for this property by Alfa.  A true and correct copy of the Alfa policy issued

to Defendants, bearing policy number H0881718, is attached hereto as **Exhibit "A"**.

7.     On or about June 19, 2007, a minor named Turner Carpenter was severely injured

when he was thrown from an all-terrain vehicle (ATV) on which he was a passenger.  The ATV

was being driven by Jessica Reeder, a minor, and was owned by the Defendants.  Jessica Reeder

was operating the ATV off the insured premises without the permission of her parents.  As a

result of the accident, Turner Carpenter has undergone significant medical treatment.

8.     A substantial question of law is presented based upon information supplied to

Alfa as to whether coverage is afforded to the Defendants under the homeowner's policy issued

by Alfa to Defendants.  Therefore, Alfa requests a determination by this Court that there is no

coverage for Defendants for injuries resulting from an accident involving a motor vehicle that

occurred off the insured premises, as a result of the Defendants having entrusted the all-terrain

vehicle to their minor daughter, or as a result of the Defendants having been negligent in their supervision of their minor daughter.

## COUNT I

### ALFA'S HOMEOWNERS POLICY DOES NOT PROVIDE PERSONAL LIABILITY COVERAGE FOR CLAIMS ARISING OUT OF THE OPERATION OF A MOTOR VEHICLE OFF THE INSURED PREMISES

9.      Alfa realleges and incorporates by reference paragraphs 1 through 8 as if they were set out fully herein.

10.     Under Coverage E- Personal Liability, the policy at issue reads as follows:

    1.      We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.  However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.

11.     Under Section II- Losses Not Insured, which applies to personal liability (COVERGE E) and Medical Payments to others (COVERAGE F), the policy excludes coverage from the following:

    e.      bodily injury or property damage arising out of the ownership, maintenance, use, loading and unloading of:

    (2)      a motor vehicle

12.     Under Section XII-the term "motor vehicle" is meant to include:

    c.      A motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle, go kart or any other similar type equipment owned by, operated by, rented to or loaned to an insured and designed or used for recreational or utility purposes off public roads, *while off an insured location.*

    *(Emphasis Added)*

3

13.     The all-terrain vehicle upon which Turner Carpenter was riding when he suffered injuries was considered a "motor vehicle" under the terms of the policy that was being operated by Jessica Reeder off of the insured location.  Thus there is no coverage for personal liability arising out of such an occurrence.

## COUNT II

### ALFA'S HOMEOWNERS POLICY DOES NOT PROVIDE PERSONAL LIBLITY COVERAGE FOR CLAIMS ARISING OUT OF AN OCCURRENCE INVOLVING A MOTOR VEHICLE THAT IS ENTRUSTED TO ANOTHER BY THE INSURED OR OPERATED BY ANOTHER WHILE SUPERVISED BY THE INSURED

14.     Alfa realleges and incorporates by reference paragraphs 1 through 8 as if they were set out fully herein.

15.     Under Coverage E- Personal Liability, the policy at issue reads as follows:

    1.     We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.  However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.

16.     Under Section II- Losses Not Insured, which applies to personal liability (COVERGE E) and Medical Payments to others (COVERAGE F), the policy excludes coverage from the following:

    f.     bodily injury or property damage arising out of:

        (1) the entrustment by an insured to any person;

        (2) the supervision by any insured person of any person.

        With regard to the ownership, maintenance or use of any motor vehicle.

17.     The all-terrain vehicle (ATV) upon which Turner Carpenter was riding when he suffered injuries was being operated by the insureds' minor daughter, Jessica Reeder, without their permission.  Thus there is no coverage for liability arising out of such occurrence.

## **RELIEF REQUESTED**

18.     Wherefore, premises considered, Alfa requests that this Court declare that there is no coverage under the Alfa homeowners policy number H0881718, for Defendants' claimed damages as outlined herein, and for such other relief that the Court may deem proper.

This the 28th day of December, 2010.

Respectfully submitted,

ALFA INSURANCE CORPORATION

BY: _____

Its Attorney

RONNIE L. WALTON (MB #6933)
REED C. DARSEY (MB # 102960)
Glover, Young, Walton & Simmons, PLLC
1724A 23rd Avenue
Post Office Box 5514
Meridian, Mississippi 39302-5514
Telephone: 601/693-1301
Telecopier: 601/693-1363

5



2108 EAST SOUTH BOULEVARD ■ POST OFFICE BOX 11000
MONTGOMERY, ALABAMA 36191-0001
334/288-3900

December 21, 2010

*This is to certify that the attached is a true and correct copy of the declarations page, the HO45 Replacement Cost Loss Settlement Endorsement and the policy booklet for policy number H0881718 which was issued to Timothy & Andrea Reeder.  This copy reflects coverage as it would have been on June 19, 2007.*

*Sincerely,*

*Bob Plaster*
*Homeowner Underwriting Manager*

## Certified Policy

ALFA MUTUAL INSURANCE COMPANY ■ ALFA MUTUAL FIRE INSURANCE COMPANY ■ ALFA MUTUAL GENERAL INSURAN
ALFA LIFE INSURANCE CORPORATION ■ ALFA INSURANCE CORPORATION
ALFA GENERAL INSURANCE CORPORATION ■ ALFA SPECIALTY INSURANCE CORPORATION ■ ALFA ALLIANCE INSURANCE
ALFA VISION INSURANCE CORPORATION ■ ALFA FINANCIAL CORPORATION

**EXHIBIT**

tabbies®

A

**ALFA INSURANCE CORPORATION**        Policy Number: H0881718
2108 EAST SOUTH BLVD.
P.O. BOX 11000                                    **FILE COPY**
MONTGOMERY, ALABAMA 36191-0001

CHANGE

I
N
S   TIMOTHY & ANDREA REEDER
U   5507 WATERPOINT CV
R   TUPELO MS  38801                  HOMEOWNER DECLARATIONS
E
D
        Policy Number  : H0881718
M       Agent # / SC # :  711 /  582
O       Member Number  : C422028
R   C   Accounting Date: 12/22/06
T   L   Agent's Name   : Dale Rushing
G   A   Service Center : 852 N Gloster St Ste 5
A   U                      Tupelo MS  38804-1958
G   S
E   E   BANCORPSOUTH BANK          Phone Number   : 662-840-6899
E       ITS SUCCESSORS &/OR ASSIGNS
        MORTGAGE LOAN DEPT
        PO BOX 4240
        TUPELO MS  38803-4240

**POLICY PERIOD:**

The policy period begins and ends at 12:01 a.m. Standard Time at the residence premises.  Insurance
is provided by this policy for the policy period shown and for successive policy periods for which the
premium is paid and accepted.  If only a six month's renewal premium is paid then the policy period
shall be only six months.  If we elect to continue this insurance, we will renew this policy for each
successive policy period, subject to payment of the renewal premium, policy rules and policy forms then
in effect. The policy will expire at the end of the then current policy period if the renewal premium
is not paid prior to that time.

The effective date of your policy is  12/21/06, 12:01 AM Standard Time.
The expiration date of your policy is  12/21/07, 12:01 AM Standard Time.
The effective date of this Policy Amendment is 12/11/06.

The residence premises covered by this policy is located:
    5507 WATERPOINT CV TUPELO MS

**COVERAGES:**     FORM HO-3@                              CLASS: 3105552
    SECTION I  (Property)        LIMITS      SECTION II  (Liability)        LIMITS

    A. Dwelling              $ 166,400      E. Personal Liability
    B. Other Structures      $  16,600         (Each Occurrence)      $ 300,000
    C. Personal Property     $ 124,800      F. Medical Payments
    D. Loss of Use           $  49,900         (Each Person)         $   1,000
                                               (Each Accident)       $  25,000

Please refer to your policy for additional coverages that are provided, and the conditions
under which coverage limits apply.

A deductible (that portion of the loss you pay) of $1000  applies to property losses
(Section I).  No deductibles apply to liability losses (Section II).
Your dwelling is located in ZONE 55, FIRE PROTECTION CLASS 05, RATED AS BRICK/VENEER AND BUILT IN 1990.
Your policy includes inflation coverage; property coverages listed above increase automatically to
help keep pace with inflation.   Current inflation index: 13.97

**MORTGAGEES-** Listed below are the mortgagees that have an interest in your property.
    1ST                                  2ND

        BANCORPSOUTH BANK
        ITS SUCCESSORS &/OR ASSIGNS
        MORTGAGE LOAN DEPT              BANCORPSOUTH BANK
        PO BOX 4240                     PO BOX 789
        TUPELO MS  38803-4240           TUPELO MS  38802
        Loan number: 3242454

**PREMIUMS:    YOUR MORTGAGEE WILL BE BILLED FOR THE RENEWAL PREMIUM.**

    Basic Policy Premium                      $  598
    Increased Liability/Medical Premium       $   10
    Section I Endorsement Premiums            $   81
    Section II Endorsement Premiums           $    0

    TOTAL POLICY PREMIUM                      $  689

$ -          9 -

**THIS DECLARATION INDICATES COVERAGE AND/OR PREMIUM CHANGES, IT IS NOT A BILL.**
Continued on Reverse Side

**ENDORSEMENTS:** (Forming a part of your policy)                    **PREMIUM**

HO-45     REPLACEMENT COST LOSS SETTLEMENT - CONTENTS            $   81

---

**CREDITS:**

### DISCOUNT INFORMATION

QUALIFIED TIME WITH COMPANY:  3 YEARS OF CONTINUOUS SERVICE:...... -  5%
HOME SAFETY DEVICES: Fire or Smoke local alarm,
Dead bolt locks and Fire extinguisher:........................... -  5%

**MORTGAGEE CLAUSE:**
a. The term "mortgagee" includes trustee.
b. **We** will pay for covered loss or damage to buildings or structures to each mortgagee shown on the **Declarations** in their order of precedence, as interests may appear.
c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.
d. If **we** deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this insurance, the mortgagee will still have the right to receive loss payment if the mortgagee:
(1) pays any premium due under the affected coverage at **our** request if **you** have failed to do so;
(2) submits a signed, sworn proof of loss within 60 days after receiving notice from **us** of **your** failure to do so; and
(3) has notified **us** of any change in ownership, occupancy or substantial change in risk known to the mortgagee.
All of the terms of the affected coverage will then apply directly to the mortgagee.
e. If **we** pay the mortgagee for any loss or damage and deny payment to **you** because of **your** acts or because **you** have failed to comply with the terms of the coverage involved:
(1) the mortgagee's right under the mortgage will be transferred to **us** to the extent of the amount **we** pay; and
(2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.
At **our** option, **we** may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, **your** mortgage and note will be transferred to **us** and **you** will pay **your** remaining mortgage debt to **us**.
f. If **we** cancel this policy, **we** will give written notice to the mortgagee at least:
(1) 10 days before the effective date of cancellation if **we** cancel for **your** nonpayment of premium; or
(2) 30 days before the effective date of cancellation if **we** cancel for any other reason.
g. If **we** elect not to renew this policy, **we** will give written notice to the mortgagee at least 30 days before the expiration date of this policy.

**NOTICE TO MORTGAGEE**

Any loss payable shall be determined by the applicable policy form in effect at the time of a loss. A copy of the policy form will be provided upon request. This policy shall be automatically renewed for successive terms for which premium is paid, at expiration of the original term and of each extension thereof. If a Mortgage is named on the Declarations page, we will continue this insurance for the mortgagee's interest for 30 days after written notice of termination to the Mortgagee and then this policy will terminate.

**NOTICE UNDER FAIR CREDIT REPORTING ACT**

Public law 91-508 requires that we advise you that a routine inquiry may be made which will provide applicable information concerning credit history, character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

COUNTERSIGNED DATE:  12/22/06

00014

HO/MS300/01 01 93 MISSISSIPPI HOMEOWNER

AUTHORIZED
COUNTERSIGNATURE   *Robert W. Pace*

S.C. # **0582**                                                          DATE:          **12/27/04**

POLICYHOLDER NAME: **TIMOTHY & ANDREA REEDER**          POLICY NUMBER: **H0881718**

## REPLACEMENT COST LOSS SETTLEMENT ENDORSEMENT HO-45

If this endorsement is shown on **your Declarations** and **you** have paid an additional premium, **you** agree with **us** as follows:

1. For the purpose of this endorsement **replacement cost** means the cost, at the time of loss, of a new article identical to the one destroyed or stolen. When an identical article is no longer manufactured or is not available, **replacement cost** shall mean the cost of a new article similar to that destroyed or stolen and which is of like kind and quality and usefulness.

2. Loss to the following property shall be settled at **replacement cost** without deduction for depreciation:

   a. property covered under COVERAGE C-PERSONAL PROPERTY; or

   b. carpeting and awnings.

3. The limit for loss under this endorsement shall not exceed the smallest of the following amounts:

   a. **replacement cost** at time of loss;

   b. the full cost of repair;

   c. 400% of the **actual cash value** at the time of loss; or

   d. any special limit described in the policy.

4. **You** may elect not to replace some or all of the destroyed or stolen property. Settlement for the property not replaced will be on an **actual cash value** basis. If **you** later decide to replace any destroyed or stolen property, **you** may make an additional claim under this endorsement within 180 days after the loss.

5. This endorsement does not increase the COVERAGE C-PERSONAL PROPERTY Limit shown on the **Declarations**.

6. **We** will not be liable under this endorsement unless and until actual repair or replacement is completed.

7. This endorsement does not apply to:

   a. outdoor antennas, satellite dishes and related equipment;

   b. photographs or negatives, antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

   c. articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items;

   d. property not maintained in good or workable condition; or

   e. property which at the time of loss, is either obsolete or useless to **you**.

All other provisions of this policy apply.

Secretary                              President

Alfa Mutual Insurance Company
Alfa Mutual General Insurance Company
Alfa Insurance Corporation
Alfa General Insurance Corporation
Alfa Mutual Fire Insurance Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Homeowner's Policy



ALFA INSURANCE CORPORATION
MONTGOMERY, AL

Special Form
HO-3G 9/02

This booklet—combined with **your Declarations**—constitutes **your** Policy. The coverages described are applicable only when shown on the **Declarations**.

**You** should notify **your** agent or **us** when:

1. **your** property is mortgaged or is subject to any lien;

2. **you** move;

3. title to **your** property is changed or transferred;

4. **your** property becomes **vacant** or **unoccupied**; or

5. **you** have a loss, accident or **occurrence**.

## DECLARATIONS

| Your Name | Coverages |
|---|---|
| Location of Your Residence | Limits |
| Policy Period | Deductibles |

Begins on Page

AGREEMENT    2

DEFINITIONS    2

SECTION I
Coverage A—Dwelling    8
Coverage B—Other Structures    9
Coverage C—Personal Property    10
Coverage D—Loss of Use    14
Additional Coverages    15
Inflation Coverage    20
Section I—Losses Insured    20
Section I—Losses Not Insured    24
Section I—Conditions    30

SECTION II
Coverage E—Personal Liability    37
Coverage F—Medical Payments to Others    38
Additional Coverages    39
Section II—Losses Not Insured    40
Section II—Conditions    47

SECTIONS I AND II—CONDITIONS    49

Includes copyrighted material of Insurance
Services Office with its permission
Copyright, Insurance Services Office, 1975, 1977,
1984 and 1999

HO-3G (9/02)

HO-3G (9/02)

(1)

## AGREEMENT

**We** agree to provide the insurance described in this policy:

1. based on **your** payment of premium for the coverages **you** chose;

2. based on **your** compliance with all applicable provisions of this policy; and

3. based on reliance that **your** statements in the application are true and it is agreed that any untrue statements, answers or any facts concealed, intentionally or otherwise, which would materially affect **our** decision to insure **you**, may void any insurance issued by **us.**

**You** agree, by acceptance of this policy:

1. that **you** will pay premiums when due and comply with the provisions of the policy;

2. that this policy contains all of the agreements between **you** and **us** and any of **our** agents; and

3. that statements on the application and **Declarations** are true and that this policy is issued in reliance on those statements.

## DEFINITIONS

**We** define some words to shorten the policy which makes it easier to read and understand. Defined words are printed in bold face. **You** can pick them out easily.

**You** and **your** mean the named **insured** shown on the **Declarations**. **Your** spouse is included if a resident of **your** household. **We**, **us** and **our** mean the Company shown on the **Declarations**.

The use of masculine gender (his) refers to his or hers.

1. **Actual cash value** means the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation, and obsolescence. **Actual cash value** applies to valuation of covered property regardless of whether

(2)

that property has suffered partial or total loss or damage.

The **actual cash value** of the lost or damaged property may be significantly less than its replacement cost.

2. **Bodily injury** means physical injury, sickness, disease or death resulting from the injury, sickness or disease to a person.

**Bodily injury** does not include:

    a. any of the following which are communicable: disease, bacteria, parasite, virus, **fungi**, or other organism, any of which are transmitted by any **insured** to any other person;

    b. the exposure to any disease, bacteria, parasite virus, **fungi** or any other organism by any **insured** to any other person; or

    c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. **Business** means:

    a. any employment, trade, occupation, or profession engaged in on a full-time, part-time or occasional basis except as provided in 3d.;

    b. the rental or holding for rental of more than three car spaces in garages or more than three stalls in stables on the **insured location;**

    c. allowing the public on an **insured location** for "pick your own" farm products operation;

    d. any other activity engaged in for **money** or other compensation except the following:

        (1) rental of a two family dwelling where part is occupied by the **insured;**

        (2) one or more activities, not described in (3) through (5) below, for which an **insured** receives total gross receipts of less than $2,000 during the 12 months before the date of loss;

        (3) volunteer activities for which no money is

(3)

incurred to perform activity;

    (4) providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    (5) the rendering of home day care services to a **relative** of an **insured** for which no compensation is received, other than the mutual exchange of such services.

4. **Collapse** means fallen down or fallen into pieces or caved in. It does not include settling, cracking, shrinking, bulging, expanding, sagging, bending, leaning or bowing.

5. **Declarations** means the policy **Declarations,** renewal notice, schedules, any amended **Declarations,** an Evidence of Insurance form or any endorsement changing any of these.

6. **Deductible** is the amount **we** will subtract from the amount **we** pay on a covered loss. The **deductible** is shown on the **Declarations** or an applicable endorsement.

7. **Farming** means the operation of an agricultural or aquacultural enterprise, including the operation of roadside stands.

8. **Fungi** means any type or form of fungus or bacteria, including but not limited to mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by any of these.

9. **Insured** means:

    a. **you** and residents of **your** household who are:

        (1) **your relatives**; or

        (2) other persons under the age of 21 and in the care of any person defined in 9.a. or 9.a.1.

    b. a student enrolled in school who was a resident of **your** household before moving out to attend school, provided the student is under the age of:

        (1) 25 and **your relative**; or

(4)

and in the care of an **insured**.

Under Section II, **insured** also includes:

    a. any person or organization legally responsible for an animal or watercraft to which this policy applies, provided it is owned by **you** or a person included in 9.a. or 9.b.

    A person or organization using or having custody of these animals or watercraft in the course of a **business** or **farming**, or without permission of the owner is not an **insured**; or

    b. any person engaged in **your** employment or the employment of a person included in 9.a. or 9.b. with respect to any vehicle to which this policy applies.

10. **Insured location** means:

    a. the **residence premises**;

    b. the part of any other premises, structures, and grounds, used by **you** as a residence and which is shown on the **Declarations**. This includes premises, structures and grounds **you** acquire while this policy is in effect for **your** use as a residence provided **you** notify **us** and pay an additional premium within 30 days of acquiring the property;

    c. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

    d. **vacant** land owned by or rented to an **insured**. This does not include farmland;

    e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

    f. individual or family cemetery plots or burial vaults of an **insured**; or

    g. any part of a premises occasionally rented to an **insured** for other than **business** or **farming** purposes.

11. **Money** means currency, coins, bank notes, travelers checks, registered checks, money orders, bullion, debit cards, scrip, stored value cards, and smart

(5)

12. **Motor vehicle** means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration.

     A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle;**

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.

     A boat, camper, home or utility trailer not being towed by or carried on a vehicle included in 12.a. is not a **motor vehicle;**

   c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle, go-kart or any other similar type equipment owned by, operated by, rented to or loaned to an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location.**

     A motorized golf cart while used for golfing purposes is not a **motor vehicle.**

     A wheelchair type vehicle designed and used to assist the handicapped is not a **motor vehicle.**

   d. any vehicle while being towed by or carried on a vehicle included in 12.a., 12.b., 12.c.

13. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

   a. **bodily injury;** or

   b. **property damage.**

14. **Pollutants** means any solid, liquid, semi-liquid, gaseous or thermal irritant or contaminant including but not limited to odor, smoke, vapor, soot, fumes, particles, gases, acids, alkalis, chemicals, pesticides, herbicides and waste. Waste includes but is not limited to animal or human waste, sewage, garbage, materials to be recycled, reconditioned or reclaimed.

(6)

15. **Property damage** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not considered to be **property damage.**

16. **Relative** means a person related to **you** or **your** spouse by blood, marriage or adoption.

17. **Remediation** means:

   a. the cost to remove **fungi** from property covered under Coverage A—Dwelling, Coverage B—Other Structures and Coverage C—Personal Property;

   b. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungi;**

   c. the cost of testing of air or property to confirm the absence or level of **fungi** whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is a presence of **fungi.**

18. **Residence employee** means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises.** This includes employees who perform similar duties elsewhere for **you.**

This does not include:

   a. employees while performing duties in connection with **business** or **farming** of an **insured.**

   b. any independent contractor or his employees;

   c. any worker employed through a work release program; or

   d. a person employed in violation of the law.

19. **Residence premises** means:

   a. a one or two-family dwelling, other structures and grounds; or

   b. that part of any other building;

where **you** reside and which is shown on the **Declarations.**

(7)

**20. Suit** means a civil proceeding in which Damages because of **bodily injury** or **property damage**, to which this insurance applies, are alleged. **Suit** includes any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

21. **Unoccupancy** or **Unoccupied** means the condition of:

    a. a dwelling (except while being constructed) not being lived in; or

    b. any building or structure (except while being constructed) not being used;

even if it contains furnishings or other property customary to its intended use or occupancy.

22. **Vacancy** or **Vacant** means the condition of a building or structure (except while being constructed) not containing sufficient furnishings or other property customary to its intended use or occupancy, or land void and free of any buildings, structures or improvements of any kind.



SECTION I COVERAGES
APPLYING TO:
COVERAGE A—DWELLING
COVERAGE B—OTHER STRUCTURES
COVERAGE C—PERSONAL PROPERTY
COVERAGE D—LOSS OF USE

## COVERAGE A—DWELLING

**We** cover the dwelling used principally as a private residence on the **residence premises** shown on the **Declarations**.

Dwelling includes:

    a. structures attached to the dwelling;

    b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

    c. foundation, floor slab and footings supporting the dwelling;

(8)

    d. wall to wall carpeting or awnings attached to the dwelling; and

    e. outdoor antennas, satellite dish systems and related equipment, whether attached to the dwelling or not. The most **we** will pay for satellite dish systems and related equipment is $500.

## COVERAGE B—OTHER STRUCTURES

**We** cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, patio, driveway, decking, sidewalk, utility line, or similar connection are considered to be other structures. In ground swimming pools are considered other structures.

**We** do not cover other structures:

    a. not permanently attached to or otherwise forming a part of the realty;

    b. used in whole or in part for **business** or **farming** purposes;

    c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage;

    d. specifically insured on this or any other policy; or

    e. which are outdoor antennas, satellite dish systems and related equipment.

## COVERAGE A—DWELLING COVERAGE B—OTHER STRUCTURES

**We** do not cover:

    a. land;

    b. any costs required to replace, rebuild, stabilize, or otherwise restore land; or

    c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A or Coverage B.

(9)

**We** cover personal property owned or used by an **insured** while it is anywhere in the world; including structures not permanently attached to or otherwise forming a part of the realty.

At **your** request, **we** will cover personal property:

 a. owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**; and

 b. of a houseguest or a **residence employee**, while the property is in any residence occupied by an **insured**.

The most **we** will pay for personal property situated at an **insured's** residence other than the **residence premises** is 10% of Coverage C Limit shown on the **Declarations**. This limitation does not apply to personal property:

 a. in a newly acquired principal residence for the first 30 days after **you** start moving the property there;

 b. if the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; or

 c. moved from the **residence premises** because the residence or other structure is being repaired, renovated or rebuilt as a result of a loss insured and is not capable of being used for the storage of property.

**We** do not cover:

 a. articles specifically insured by this or any other policy;

 b. animals, birds or fish;

 c. **motor vehicles** including:

  (1) their accessories, equipment and parts;

  (2) electronic apparatus and accessories whether or not permanently installed that

are designed to be solely operated from the electrical system of a **motor vehicle** or motor propelled vehicle. Accessories include but are not limited to: antennas, tapes, wires, records, discs or other media, that can be used with an apparatus described in this item c.(2);

  (3) devices or instruments for the recording or reproduction of sound permanently installed in a **motor vehicle**;

  (4) discs, tapes, wires, records or other mediums while in a **motor vehicle**;

 d. aircraft or aircraft parts;

 e. property of roomers, boarders, tenants and other residents not related to an **insured**. **We** do cover property of **relatives** while residing on the **residence premises**;

 f. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others;

 g. property rented or held for rental to others away from the **residence premises**;

 h. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. **We** will cover the cost of blank books, cards or other blank material plus the cost of labor **you** incur for transcribing or copying such records;

 i. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market; or

 j. satellite dish systems and related equipment.

(10)

(11)

## COVERAGE C—PERSONAL PROPERTY
SPECIAL LIMITS ON CERTAIN PROPERTY

These limits do not increase the Coverage C Limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on **money**, gold other than goldware, silver other than silverware, platinum and medals, including any of these that are a part of a collection;

b. $500 on refrigerated or frozen products;

c. $1,000 on property used or intended for use in a **business**, including merchandise held as samples for sale or for delivery after sale while on the **residence premises**.

This limitation does not apply to electronic data processing system equipment or the recording or storage media used with that equipment while on the **residence premises**.

Property used or intended to be used in **business** is limited to $250 while property is away from the **residence premises**;

d. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders, stamps and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

e. $1,000 on watercraft of all types including outboard motors, their trailers, furnishings and equipment;

f. $1,000 on trailers not used with watercraft;

g. $1,000 for loss by theft of jewelry, watches, precious and semi-precious stones and furs, including any article containing fur which represents its principal value;

h. $1,000 on any one motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle, go-kart or any other similar type equipment owned by, operated by, rented to an **insured** and designed or used for recreational or utility purposes off public roads while on the **residence premises**.

i. $2,500 on trading cards and comic books, including any of these that are a part of a collection;

j. $2,500 for loss by theft of firearms and related equipment;

k. $2,500 for loss by theft of silverware, goldware and pewterware;

l. $5,000 for electronic data processing system equipment and the recording or storage media used with that equipment while located on the **residence premises**.

This coverage is limited to $250 for electronic data processing system equipment or media while located away from the **residence premises** except when equipment or media is removed from the **residence premises** for the purpose of repair, servicing or maintenance.

An **insured** student's equipment and media are covered for up to 10% of the Coverage C Limit or $5,000, whichever is less, while at the **insured** student's residence away from home;

We do not cover electronic data processing system equipment or media for theft while in or on a **motor vehicle**;

m. $5,000 on any one article and $10,000 in aggregate for loss by theft of any rug(s), carpet(s) (except wall-to-wall carpet), tapestry(s), wall-hanging(s), art or statuary;

n. $5,000 maximum on any one lawn mower or lawn and garden tractor, including parts designed and used for garden or lawn care of the **residence premises**;

o. $5,000 maximum on a wheel chair-type vehicle designed and used to assist the handicapped.

(12)

(13)

**COVERAGE D—LOSS OF USE**

**We** cover the following:

1. ADDITIONAL LIVING EXPENSE. If a loss covered under Section I makes that part of the **residence premises,** where **you** reside uninhabitable, **we** cover any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living.

Payment will be for the lessor of the period of time normally required to repair, rebuild or replace damaged property with reasonable speed and similar quality or, if you permanently relocate, the shortest time required for **your** household to settle elsewhere. Delay caused by inability to obtain immediate financing will not be covered.

There will be no payments under this coverage for **business** or **farming** expenses incurred as a result of a loss.

2. FAIR RENTAL VALUE. If a loss covered under Section I makes that part of the **residence premises** rented to others or held for rental by **you** uninhabitable, **we** cover the fair rental value of such premises less all expenses that do not continue while it is uninhabitable.

Payment will be for the shortest time normally required to repair, rebuild or replace damaged property with reasonable speed and similar quality to that part of the premises rented or held for rental. **We** do not cover loss or expense due to cancellation of a lease or agreement.

3. PROHIBITED USE. If a civil authority prohibits **you** from use of the **residence premises** as a result of direct damage to neighboring premises by a loss insured in this policy, **we** cover any resulting Additional Living Expense and Fair Rental Value loss for a period not exceeding two weeks during which use is prohibited.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

(14)

**ADDITIONAL COVERAGES APPLYING TO COVERAGE A—DWELLING COVERAGE B—OTHER STRUCTURES COVERAGE C—PERSONAL PROPERTY COVERAGE D—LOSS OF USE**

1. DEBRIS REMOVAL

a. **We** will pay the reasonable expense for the removal of debris of covered property resulting from a loss insured.

This expense is included in the Limit that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the Limit for the damaged property, an additional 5% of the Coverage A Limit is available for such expense.

b. **We** will also pay the reasonable expense, up to $500, for the removal from the **residence premises** of tree(s) felled by a loss caused by Windstorm or Hail or Weight of Ice, Snow or Sleet, provided the tree(s):

(1) damage(s) a covered structure; or

(2) does not damage a covered structure, but:

(a) block(s) a driveway on the **residence premises** which prevent(s) a **motor vehicle,** that is registered for use on public roads or property, from entering or leaving the **residence premises:** or

(b) block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $500 limit is the most **we** will pay in any one loss regardless of the number of fallen trees.

**We** do not cover property grown for **farming** or **business** purposes.

(15)

2. TEMPORARY REPAIRS.

If damage is caused by a loss insured, **we** will pay the reasonable and necessary costs **you** incur for temporary repairs to covered property to protect the covered property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. TREES, SHRUBS AND OTHER PLANTS.

**We** cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by:

    a. Fire or Lightning;

    b. Explosion;

    c. Riot or Civil Commotion;

    d. Aircraft;

    e. Vehicles not owned or operated by a resident of the **residence premises**;

    f. Vandalism or Malicious Mischief; or

    g. Theft.

**We** will pay up to 5% of the Limit that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub, plant or lawn, including debris removal expense. This coverage may increase the limit otherwise applicable.

**We** do not cover property grown for **farming** or **business** purposes.

4. FIRE DEPARTMENT CHARGES.

**We** will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a loss insured. No **deductible** applies to this coverage.

5. UNAUTHORIZED USE, FORGERY, COUNTERFEIT COVERAGE.

    a. **We** will pay up to $1,000 for:

        (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards, debit cards, stored value cards, smart cards and bank fund transfer

(16)

cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, **we** do not cover use by an **insured** or anyone else;

        (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

        (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No **deductible** applies to this coverage.

**We** will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

    b. **We** do not cover loss arising out of **business** or **farming** pursuits.

    c. We do not cover dishonesty of an **insured**.

    d. Defense:

        (1) **We** may make any investigation and settle any claim or **suit** that **we** decide is appropriate. **Our** obligation to defend claims or **suits** ends when the amount **we** pay for the loss equals the Limit shown on the **declarations**.

        (2) If claim is made or a **suit** is brought against an **insured** for liability under this coverage, **we** will provide a defense. This defense is at **our** expense by counsel of **our** choice.

        (3) **We** have the option to defend at **our** expense an **insured** or an **insured's** bank against any **suit** for the enforcement of payment under this coverage.

6. POWER INTERRUPTION.

**We** cover accidental direct physical loss caused directly or indirectly by a change of temperature which

(17)

results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a loss insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

### 7. REFRIGERATED OR FROZEN PRODUCTS.

Coverage C is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to **you**, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

    a. removal of a plug from an electrical outlet; or

    b. turning off an electrical switch unless caused by a loss insured.

This coverage is subject to the Coverage C—Personal Property Special Limits on Certain Property applying to refrigerated and frozen products. This coverage does not increase the limit applying to the damaged property.

### 8. ARSON AWARD.

**We** will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

### 9. VOLCANIC ACTION.

**We** cover direct physical loss resulting from the eruption of a volcano when the loss or damage is caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust, rock or particulate matter; or

    c. lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single eruption. This coverage does not include the cost to remove ash, dust, rock or

(18)

particulate matter that does not cause direct physical loss or damage to the covered property.

### 10. GRAVE MARKERS.

**We** will pay up to $5,000 maximum for any one grave marker, including mausoleums owned by an **insured**, on or away from the **residence premises** for losses insured against under Coverage C—Personal Property.

### 11. COLLAPSE.

    a. With respect to this Additional Coverage:

        1. **We** insure for direct physical loss to covered property involving **collapse** of a building or any part of a building if the **collapse** was caused by one or more of the following:

            (a) the Losses Insured under Coverage C—Personal Property. These causes of loss apply to covered buildings and personal property for loss insured by this **collapse** coverage;

            (b) weight of contents, equipment, animals or people;

            (c) weight of rain which collects on a roof.

        2. **collapse** does not mean:

            a. a building or any part of a building that is in danger of falling down or caving in;

            b. a part of a building that is standing even if it has separated from another part of the building; and

            c. a building or any part of a building that is standing even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinking, expanding or bowing.

        3. **We** do not cover loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, well, bulkhead, pier, wharf or dock, unless the loss is a direct result of the **collapse** of a building or any part of a building.

(19)

This coverage does not increase the Limit that applies to the damaged covered property.

### 12. **FUNGI REMEDIATION**

In the event **you** have damage from **fungi**, that is a result of a Section I loss insured **we** will pay no more than $10,000 for:

    a.  reasonable and necessary **fungi remediation** of the portion of the loss resulting from **fungi**; and

    b.  Coverage D—Loss of Use expense to maintain **your** normal standard of living when damage results to covered property.

This coverage does not increase any Limit applying to the covered property.

---

### INFLATION COVERAGE

---

The Limits shown on the **Declarations** for Coverage A—Dwelling, Coverage B—Other Structures, Coverage C—Personal Property and Coverage D—Loss of Use may be adjusted at each renewal. The adjustment at renewal will be based on **our** guidelines for such adjustments.

---

### SECTION I—LOSSES INSURED

---

### COVERAGE A—DWELLING AND COVERAGE B—OTHER STRUCTURES

---

**We** insure for accidental direct physical loss to the property described in Coverages A and B except as provided in SECTION I—LOSSES NOT INSURED.

---

### COVERAGE C—PERSONAL PROPERTY

---

**We** insure for direct physical loss to property described in Coverage C caused by the following perils except as provided in SECTION I—LOSSES NOT INSURED:

(20)

1. FIRE OR LIGHTNING.

2. WINDSTORM OR HAIL.

This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. EXPLOSION.

4. RIOT OR CIVIL COMMOTION.

5. AIRCRAFT, MISSILES and SPACECRAFT, meaning an actual impact with covered property.

6. VEHICLES, meaning impact between a vehicle and covered property.

7. SMOKE, meaning sudden and accidental damage from smoke.

This does not include loss caused by smoke from agricultural smudging or industrial operations.

8. VANDALISM OR MALICIOUS MISCHIEF, meaning only willful and malicious damage to or destruction of property.

9. THEFT, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

    a.  loss of a precious or semi-precious stone from its setting;

    b.  loss caused by theft:

        (1)  committed by an **insured** or by any other person regularly residing on the **insured location**;

        (2)  in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(21)

(3) from the part of a residence premises rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of **money**, gold, goldware, silver, silverware, pewterware, platinum, and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones.

  c. loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there.

    Property of an **insured,** including an **insured** student is covered while at a residence away from the **residence premises** for up to 10% of **your** Coverage C— Personal Property Limit;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

10. FALLING OBJECTS.

This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. WEIGHT OF ICE, SNOW OR SLEET which causes damage to property contained in a building.

(22)

12. SUDDEN AND ACCIDENTAL DISCHARGE OR OVERFLOW OF WATER OR STEAM.

This peril means sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

  a. to the system or appliance from which the water or steam escaped;

  b. caused by or resulting from freezing;

  c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters from septic tanks, sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or related equipment or any other system designed to remove subsurface water from the foundation area;

  d. caused by roof drain, gutter, downspout or similar fixtures or equipment.

13. SUDDEN AND ACCIDENTAL TEARING APART, CRACKING, BURNING OR BULGING of a steam or water heating system or appliance, an air conditioning or automatic fire protective sprinkler system.

This peril does not include loss caused by or resulting from freezing.

14. FREEZING of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is **vacant, unoccupied** or being constructed, unless **you** have used reasonable care to:

  a. maintain heat in the building; or

  b. shut off the water supply and drain the system and appliances of water.

15. SUDDEN AND ACCIDENTAL DAMAGE to electrical appliances, devices, fixtures; and wiring, tubes, transistors, electronic components or circuitry that are a part of appliances, computers, home entertainment

(23)

units caused by an increase or decrease of artificially generated electrical current.

16. BREAKAGE OF GLASS, meaning damage to personal property caused by or resulting from breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I—LOSSES NOT INSURED
## COVERAGE A—DWELLING
## COVERAGE B—OTHER STRUCTURES
## COVERAGE C—PERSONAL PROPERTY

1. **We** do not insure for any loss to the property described in Coverage A—Dwelling, Coverage B—Other Structures, Coverage C—Personal Property which is directly or indirectly caused by one or more of the perils listed in a. through q.:

   a. **collapse**, except as specifically provided in Coverage A—Dwelling, Coverage B—Other Structures and Coverage C—Personal Property, Coverage D—Loss of Use Additional Coverages;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is **vacant, unoccupied** or being constructed. This exclusion does not apply if **you** have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, boathouse, wharf or dock;

   d. theft in or to a dwelling or other structure under construction, or theft of materials, tools, and supplies for use in the construction until the dwelling is completed and occupied;

   e. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been **vacant** or **unoccupied** for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered **vacant** or **unoccupied**;

   f. caused by or resulting from continuous or repeated seepage or leakage of water from a:

      1. water system;

      2. heating or air conditioning or automatic fire protective sprinkler system;

      3. household appliance; or

      4. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

   which results in deterioration, corrosion, rust, **fungi**, wet or dry rot.

   If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliances. **We** do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration;

   h. inherent vice, latent defect and mechanical breakdown or any quality in property that causes it to damage or destroy itself;

   i. corrosion, electrolysis or rust;

   j. wet or dry rot;

   k. **fungi**, except as specifically provided in Coverage A—Dwelling, Coverage B—Other Structures, Coverage C—Personal Property, Coverage D—Loss of Use Additional Coverages.

(24)

(25)

m. smog, smoke from agricultural smudging or industrial operations;

n. birds, vermin, rodents, insects, or domestic animals. **We** do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects, or domestic animals;

o. pressure from or presence of tree, shrub or plant roots;

p. settling, cracking, shrinking, bulging, or expanding of pavements, patios, foundations, walls, floors, roofs, or ceilings;

q. sinkhole.

These Losses Not Insured apply regardless of whether the loss occurs suddenly or gradually, involves isolated or wide spread damage, arises from natural or external forces, or occurs as a result of any combination of these.

**We** do insure for any resulting loss from items a. through p. provided that the loss itself is a loss insured by Section I.

2. **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These Losses Not Insured apply whether or not the loss event results in widespread damage or affects a substantial area.

a. ORDINANCE OR LAW, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. EARTH MOVEMENT:

(1) Any earth movement, such as earthquake, landslide, mine subsidence or earth sinking, rising or shifting. This exclusion applies whether the earth movement is caused by human or animal activities or any act of nature.

But if earth movement results in fire or explosion, **we** will pay for the loss or damage

(26)

caused by that fire or explosion.

(2) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire or volcanic action, **we** will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct physical loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) airborne volcanic blast or airborne shock waves;

(b) ash, dust, rock or particulate matter; or

(c) lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single loss. Volcanic action does not include the cost to remove ash, dust, rock or particulate matter that does not cause direct physical loss or damage to covered property.

**We** do insure for direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. WATER DAMAGE, meaning:

(1) flood, flash flood, surface water, waves, tidal water, overflow of a body of water, spray from any of these, whether or not driven by wind;

(2) caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters from septic tanks, sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or related equipment or any other system designed to remove subsurface water from the foundation area; or

(3) water below the surface of the ground. This includes hydrostatic pressure and water which exerts pressure on, or seeps

(27)

or leaks through a building sidewalk, driveway, foundation, swimming pool or other structure.

However, **we** do insure for direct loss by fire or explosion, resulting from water damage, provided the resulting loss is itself a loss insured.

d. NEGLECT, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. WAR, including declared war, undeclared war, civil war, insurrection, rebellion, revolution, warlike act, destruction or seizure or use for a military purpose, and including any consequence of any of these.

f. Discharge of a nuclear, chemical or biological weapon or device whether intentional or unintentional shall be deemed a warlike act.

g. NUCLEAR HAZARD, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

h. INTENTIONAL LOSS means any loss arising out of any act an **insured** commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no **insured** is entitled to coverage, even **insureds** who did not commit or conspire to commit the act causing the loss.

i. GOVERNMENTAL ACTION means the damaging, confiscation or seizure of property described in Coverage A, B or C by any governmental or public authority.

This exclusion does not apply to such acts by any governmental or public authority that are taken at the time of a fire to prevent its spread,

(28)

if the loss caused by fire would be covered under this policy.

**We** do not insure for such loss excluded under items a. through i. regardless of:

   a. the cause of the excluded event;

   b. other causes of the loss; or

   c. whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

3. **We** do not insure under any coverage for any loss directly or indirectly caused by one or more of the items below:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, development, surveying, siting, building codes;

      (2) design, specifications, workmanship, construction, grading, compaction, repair, renovation or remodeling;

      (3) materials used in construction or repair;

      (4) maintenance; or

   c. failure to comply with buildings codes.

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

**We** do insure for any ensuing loss from items 3.a., 3.b., and 3.c. unless the ensuing loss is itself a loss not insured by Section I.

4. **We** do not insure for loss described in paragraphs 1. and 2. SECTION I - LOSSES NOT INSURED regardless of whether one or more of the items listed in paragraph 3. SECTION I - LOSSES NOT INSURED:

   a. directly or indirectly cause, contribute to or aggravate the loss; or

(29)

b. occur before, at the same time, or after the loss of any other cause of the loss.

**We** do insure for ensuing loss from items 3.a. and 3.c. unless the ensuing loss is itself a loss not insured by Section I.

## CONDITIONS APPLYING TO: SECTION I

1. DUTIES IN THE EVENT OF LOSS OR DAMAGE.

    a. **You** must see that the following are done in the event of loss or damage to covered property:

    (1) notify the police if a law may have been broken;

    (2) give **us** prompt notice of the loss or damage. Include a description of the property involved;

    (3) as soon as possible, give **us** a description of how, when and where the loss or damage occurred;

    (4) take all reasonable steps to protect the covered property from further damage. If feasible:

    a. set the damaged property aside in the best possible order for examination; and

    b. keep a record of **your** expenses necessary to protect the covered property for consideration in the settlement of the claim.

    This will not increase the limits shown on the **Declarations**.

    **We** will not pay for any subsequent loss or damage resulting from a cause of loss that is not a loss insured;

    (5) at **our** request, give **us** complete inventories of the damaged and undamaged prop-

erty. Include quantities, costs, values and amount of loss claimed. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

(6) as often as may be reasonably required, permit **us** to inspect the property damaged and examine **your** books and records;

Also permit **us** to take samples of damaged and undamaged property for inspection, testing and analysis, and permit **us** to make copies from **your** books and records;

(7) send **us** a signed, sworn proof of loss containing the information **we** request to investigate the claim. **You** must do this within 60 days after **our** request. **We** will supply **you** with the necessary forms; and

(8) cooperate with **us** in the investigation or settlement of the claim.

b. **We** may examine any **insured, insured's** employees, members of the **insured's** household or others under oath, while not in the presence of any other **insured** and at such times as may be reasonably required, about any matter relating to this insurance or the claim. This includes an examination of books and records relating to this insurance or claim. In the event of an examination, an examinee must sign the answers to the examination.

2. APPRAISAL.

    If **you** and **we** fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to

select an umpire. The appraisers shall then set the
amount of the loss. If the appraisers submit a written
report of an agreement to **us**, the amount agreed
upon shall be the amount of the loss. If the appraisers
fail to agree within a reasonable time, they shall
submit their differences to the umpire. Written agree-
ment signed by any two of these three shall set the
amount of the loss. Each appraiser shall be paid by
the party selecting that appraiser. Other expenses of
the appraisal and the compensation of the umpire
shall be paid equally by **you** and **us**.

3. INSURABLE INTEREST.

**We** will not pay more than the insurable interest an
**insured** has in the covered property at the time of loss.
Regardless of the number of **insureds, we** will not pay
more than the applicable Limit at the time of the loss.

4. ABANDONED PROPERTY.

**We** are not obliged to accept abandoned property.

5. A PAIR, SET OR PARTS.

    a. Pair or Set. In case of loss or damage to any
part of a pair or set, **we** may:

        (1) repair or replace any part to restore the pair
or set to its usefulness before the loss; or

        (2) pay the difference between the value of the
pair or set before and after the loss.

    b. Parts. In case of loss of or damage to any part
of covered property consisting of several parts
when complete, **we** will only pay for the value
of the lost or damaged part.

6. MORTGAGE CLAUSE.

    a. The term mortgagee includes trustee.

    b. **We** will pay for covered loss or damage to
buildings or structures to each mortgagee
shown on the **Declarations** in their order of
precedence, as interests may appear.

    c. The mortgagee has the right to receive loss
payment even if the mortgagee has started
foreclosure or similar action on the building or
structure.

    d. If **we** deny **your** claim because of **your** acts or

(32)

because **you** have failed to comply with the
terms of this insurance, the mortgagee will still
have the right to receive loss payment if the
mortgagee:

    (1) pays any premium due under the affected
coverage at **our** request if **you** have failed
to do so;

    (2) submits a signed, sworn proof of loss
within 60 days after receiving notice from
**us** of **your** failure to do so; and

    (3) has notified **us** of any change in ownership,
occupancy or substantial change in risk
known to the mortgagee.

All of the terms of the affected coverage will
then apply directly to the mortgagee.

    e. If **we** pay the mortgagee for any loss or
damage and deny payment to **you** because of
**your** acts or because **you** have failed to
comply with the terms of the coverage in-
volved:

    (1) the mortgagee's rights under the mort-
gage will be transferred to **us** to the extent
of the amount **we** pay; and

    (2) the mortgagee's right to recover the full
amount of the mortgagee's claim will not
be impaired.

At **our** option, **we** may pay the mortgagee the
whole principal on the mortgage plus any
accrued interest. In this event, **your** mort-
gage and note will be transferred to **us** and
**you** will pay **your** remaining mortgage debt to
**us**.

    f. If **we** cancel this policy, **we** will give written
notice to the mortgagee at least:

    (1) 10 days before the effective date of can-
cellation if **we** cancel for **your** nonpay-
ment of premium; or

    (2) 30 days before the effective date of can-
cellation if **we** cancel for any other reason.

    g. If **we** elect not to renew this policy, **we** will give
written notice to the mortgagee at least 30

(33)

**7. LOSS PAYABLE CLAUSE.**

Loss will be adjusted only with the **insured** named and payable to the **insured** and the Loss Payee shown on the **Declarations** as their respective interests may appear, subject to all the terms and conditions of the policy.

**8. NO BENEFIT TO BAILEE.**

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

**9. PERMISSION GRANTED TO YOU.**

**You** may make alterations, additions and repairs to **your** building and complete structures under construction.

The **insured location** may be **vacant** or **unoccupied** for 30 consecutive days, except where this policy specifies otherwise, however, a structure in the course of construction shall not be deemed **vacant** or **unoccupied**.

**10. OTHER INSURANCE.**

If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

However, any coverage **we** provide on property **you** do not own will be excess over any other collectable insurance.

**11. GLASS REPLACEMENT.**

Loss for damage to glass caused by a loss insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**12. LOSS SETTLEMENT.** In this Condition 12., the terms cost to repair or replace and replacement cost do not include the increased costs incurred to comply with the enforcement of any building code, ordinance or law.

Covered property losses are settled less any applicable **deductible** as follows:

(34)

a. Personal property and structures that are not buildings, carpeting, domestic appliances, awnings, outdoor antennas, satellite dish systems and related equipment whether or not attached to buildings, for the lessor of the following amounts:

(1) **actual cash value** of the property at the time of loss;

(2) cost to repair to its condition prior to loss; or

(3) any limit applying to covered property under this policy.

b. **We** cover the dwelling used principally as a private residence and other structures on the **residence premises** at replacement cost without deduction for depreciation, subject to the following:

(1) If at the time of loss the Limit shown on the **Declarations** for the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, **we** will pay the cost of repair or replacement after application of any **deductible**, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the Limit shown on the **Declarations** under this policy applying to the building(s);

(b) the replacement cost of that part of the building damaged with like kind, quality construction and usefulness on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(2) If at the time of loss the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately prior to the loss, **we** will pay the larger of the following

(35)

amounts but not exceeding the Limit under this policy applying to the building:

    (a) the **actual cash value** of that part of the building damaged; or

    (b) that proportion of the cost to repair or replace, without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) When the cost to repair or replace the damage is more than $1,000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, **we** will pay no more than the **actual cash value** of the damage until actual repair or replacement is completed.

(4) **You** may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an **actual cash value** basis. Repairs or replacement must be completed within 180 days of loss to collect based on replacement costs.

13. **VACANT** OR **UNOCCUPIED** HOUSE DEDUCTIBLE. In lieu of the base **deductible**, a 5% **vacant** or **unoccupied** house special **deductible** applies to each loss insured if **your** dwelling is **unoccupied** or **vacant** for more than 30 consecutive days at the time of a covered loss, and **you** did not notify **us** it would be **vacant** or **unoccupied**. This **deductible** applies to Coverages A, B, C and Additional Coverages. The dollar amount of this **deductible** is equal to 5% of the amount of coverage for Coverage A at the time of a loss insured. However, if the dollar amount of the base **deductible** is greater than the dollar amount of the **vacant** or **unoccupied** house **deductible**, the base **deductible** applies.

14. **OUR** OPTION. **We** may repair or replace any part of the property damaged or stolen with like kind and quality property. Any property **we** pay for or replace becomes **our** property. It is your duty to deliver that property to **us**.

15. LOSS PAYMENT. At **our** option, **we** will pay **you** or some other person named in the policy that is legally entitled to receive payment for a covered loss. Also, **we** may pay a person or entity on **your** behalf. The covered loss will be payable 60 days after **we** receive **your** proof of loss and:

    a. reach agreement with **you**; or

    b. there is an entry of a final judgement; or

    c. there is a filing of an appraisal award with **us**.

Payment to one **insured** shall satisfy **our** obligation even if more than one **insured** is named on the **Declarations**.

## SECTION II—COVERAGES APPLYING TO:
## COVERAGE E—PERSONAL LIABILITY
## COVERAGE F—MEDICAL PAYMENTS TO OTHERS

### COVERAGE E—PERSONAL LIABILITY

1. **We** will pay those sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. **We** may at **our** discretion investigate any **occurrence** and settle any claim or **suit** that may result. **We** shall have no obligation to pay attorney fees incurred by **you** prior to delivery to **us** of notification of **suit**. But:

    a. the amount **we** will pay for damages is limited by the Limit shown on the **Declarations**; and

    b. **our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGE E—LIABILITY or medical

expenses under COVERAGE F—MEDICAL PAYMENTS TO OTHERS.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the SECTION II - ADDITIONAL COVERAGES.

2. This insurance applies to **bodily injury** and **property damage** only if:

  a. the **bodily injury** or **property damage** is caused by an **occurrence**;

  b. the **bodily injury** or **property damage** occurs during the policy period.

## COVERAGE F—MEDICAL PAYMENTS TO OTHERS

1. **We** will pay reasonable medical expenses incurred within 1 year from the date of an accident causing **bodily injury**.

**We** will make these payments up to the limits shown on the **Declarations**.

Reasonable medical expenses means expenses incurred for:

  a. first aid administered at the time of an accident;

  b. necessary medical, surgical, x-ray and dental services, eyeglasses, pharmaceuticals, hearing aids, including prosthetic devices; and

  c. necessary ambulance, hospital, professional nursing and funeral services.

2. This coverage applies only:

  a. to a person (other than an **insured**) who is on the **insured location** with the permission of an **insured**, or

  b. to a person (other than an **insured**) off the **insured location**, provided the **bodily injury**:

    (1) arises out of a condition on the **insured location** or the ways immediately adjoining it;

(38)

(2) is caused by the activities of an **insured**;

(3) is caused or sustained by a **residence employee** in the course of employment by an **insured**; or

(4) is caused by an animal owned by or in the care of an **insured**.

## SECTION II - ADDITIONAL COVERAGES

**We** cover the following in addition to the limits of liability:

1. CLAIM EXPENSES. **We** will pay:

  a. expenses **we** incur and costs taxed against an **insured** in **suits we** defend;

  b. premiums on bonds required in civil **suits we** defend, but not for bond amounts greater than the Coverage E Limit. **We** are not obligated to apply for or furnish any bond;

  c. reasonable expenses an **insured** incurs at **our** request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding **us** in the investigation or defense of claims or **suits**;

  d. prejudgment interest awarded against the **insured** or that part of the judgment **we** pay; and

  e. interest on the entire judgment which accrues after entry of the judgment and before **we** pay or tender, or deposit in court that part of the judgment which does not exceed the Limit that applies.

2. DAMAGE TO PROPERTY OF OTHERS.

  a. **We** will pay for **property damage** to property of others caused by an **insured**.

  b. **We** will not pay more than the smallest of the following amounts:

    (1) replacement cost at the time of loss;

    (2) full cost of repair; or

    (3) $1,000 in any one **occurrence**.

(39)

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**; or

(4) arising out of:

(a) **business** or **farming** pursuits;

(b) any act or omission in connection with a premises an in**sured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft of any type.

3. FIRST AID EXPENSES. **We** will pay expenses up to $500 for any one **occurrence** for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

**SECTION II—LOSSES NOT INSURED APPLYING TO:**

**COVERAGE E—PERSONAL LIABILITY**

**COVERAGE F—MEDICAL PAYMENTS TO OTHERS**

1. Coverage E and Coverage F do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by an **insured** or **residence employee**;

(2) which is the result of willful or malicious acts of an **insured** or **residence employee**;

(3) which is a result of actual or alleged sexual harassment, sexual molestation, sexual misconduct of any kind, corporal punishment, physical abuse or mental abuse;

(4) which is either actual or alleged arising out of lead, asbestos, bacteria, virus or **fungi** including, but not limited to, the ingestion, inhalation or absorption of any of these in any form including:

(a) any loss, cost of expense arising out of any request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effect of any of the above; or

(b) any loss, cost of expense arising out of any claim or **suit** by or on behalf of a governmental authority for damages to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effect of any of the above.

(5) whether actual or alleged arising out of slander, libel, fraud, misrepresentation or land line disputes.

These Losses Not Insured apply to any **insured** who could be held legally liable.

b. **bodily injury** or **property damage** arising out of **business** or **farming** engaged in by an **insured** or the rental or holding for rental of any part of any premises by an **insured**. The exclusion does not apply:

(1) with respect to Coverage E to the occasional or part-time **business** or **farming** pursuits of an **insured** who is under 19 years of age;

(2) to the rental or holding for rental of a dwelling on the **residence premises**:

(a) on an occasional basis for the exclusive use as a residence; or

(b) in part, unless intended for use as a residence by more than two roomers or boarders;

(40)

(41)

(3) where one of the residence premises is a two family dwelling and **you** occupy one part and rent or hold for rental the other part;

c.  **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d.  **bodily injury** or **property damage** arising out of any premises owned or rented to any **insured** at the time of loss which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e.  **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle**; or

(3) a watercraft:

(a) if it has inboard or inboard-outdrive motor power of more than 50 horse-power;

(b) which is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horse-power owned by an **insured**; or

(d) designated as an airboat, air cushion, personal watercraft or similar type of craft.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.** Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f.  **bodily injury** or **property damage** arising out of:

(42)

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft of any type, or **motor vehicle**;

g.  **bodily injury** or **property damage** caused by declared or undeclared war, civil war, insurrection, rebellion, revolution, warlike act, destruction or seizure or use for a military purpose, and including any consequence of any of these;

h.  **bodily injury** or **property damage** discharge of a nuclear, chemical or biological weapon or device whether intentional or unintentional shall be deemed a warlike act;

i.  **bodily injury** to **you** or any **insured** within the definition of **insured**;

This exclusion also applies to any claim made or **suit** brought against **you** or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by **you** or any **insured** within the definition of **insured**;

j.  **bodily injury** or **property damage** which arises out of the transmission of a communicable disease, including but not limited to viral or bacterial by an **insured**;

k.  **bodily injury** or **property damage** arising out of the use of the **insured location** for hunting by anyone other than an **insured**;

l.  **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar

(43)

not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

m. **bodily injury or property damage** arising out of the selling of real, personal or **business** property;

n. **pollution**

(1) **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** or odors:

(a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

(b) at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(c) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom **you** may be legally responsible; or

(d) at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

(i) if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

(44)

and (d)(i) do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.

As used in this loss not insured, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or any way respond to or assess the effects of **pollutants**; or

(b) claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

o. CONTROLLED SUBSTANCE

**Bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

p. **bodily injury** or **property damage** caused by any substance released or discharged from an aircraft.

2. COVERAGE E—PERSONAL LIABILITY does not apply to:

a. liability

(45)

(1) for your share of any loss assessment
charged against all members of an asso-
ciation of property owners; or

(2) assumed under any unwritten contract
or agreement, or by agreement, or by
contract or agreement in connection with
**business** or farming of the **insured**;

b. **property damage** to property owned by an
**insured**;

c. **property damage** to property rented to, occu-
pied or used by or in the care of an **insured**.
This exclusion does not apply to **property
damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any
benefits required to be provided or voluntarily
provided by an **insured** under a workers' com-
pensation, non-occupational disability, or occu-
pational disease law; or

e. **bodily injury** or **property damage** arising out
of the care or custody of animals not owned by
an **insured**.

3. COVERAGE F—MEDICAL PAYMENTS TO OTH-
ERS does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the
**insured location** and does not arise out of or
in the course of the **residence employee's**
employment by an **insured**;

b. to a person eligible to receive any benefits
required to be provided or voluntarily provided
under any workers' compensation, non-occu-
pational disability or occupational disease law;
or

c. to a person regularly residing on any part of
the **insured location**, other than a **residence
employee** of an **insured**.

(46)

SECTION II—CONDITIONS
APPLYING TO
COVERAGE E—PERSONAL LIABILITY
COVERAGE F—MEDICAL PAYMENTS TO
OTHERS

1. The COVERAGE E—PERSONAL LIABILITY
Limit is shown on the **Declarations**. This is **our** limit for
all damages from each **occurrence** regardless of the
number of **insureds**, claims made or persons injured.

All **bodily injury** and **property damage** resulting from
any one accident or from continuous or repeated
exposure to substantially the same general conditions
shall be considered to be the result of one **occurrence**.

The COVERAGE F—MEDICAL PAYMENTS TO
OTHERS Limit is shown on the **Declarations**. This is
**our** limit for all medical expense for **bodily injury** to
one person as the result of one accident.

2. SEVERABILITY OF INSURANCE. This inurance
applies separately to each **insured**. This condition
shall not increase **our** limit of liability for any one
**occurrence**.

3. DUTIES AFTER AN **OCCURRENCE**. In the
event of an **occurrence**, the **insured** shall perform the
following duties that apply. The **insured** shall cooper-
ate with **us** in seeing that these duties are performed:

a. give written notice to **us** or **our** agent as soon
as practicable, which sets forth:

(1) the identity of this policy and **insured**;

(2) reasonably available information on the
time, place and circumstances of the acci-
dent or **occurrence**; and

(3) names and addresses of any claimants
and available witnesses;

b. forward to **us** every notice, demand, sum-
mons or other process relating to the accident
or **occurrence**;

c. at **our** request, assist in:

(47)

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of **suits** and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - DAMAGE TO PROPERTY OF OTHERS:

(1) submit to **us** within 60 days after the loss, a sworn statement of loss; and

(2) exhibit the damaged property if within the **insured's** control;

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. DUTIES OF AN INJURED PERSON—COVERAGE F—MEDICAL PAYMENTS TO OTHERS. The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give **us** written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow **us** to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by **us** when and as often as **we** reasonably require.

5. PAYMENT OF CLAIM—COVERAGE F—MEDICAL PAYMENTS TO OTHERS. Payment under this coverage is not an admission of liability by an **insured** or **us**.

6. OTHER INSURANCE—COVERAGE E—PERSONAL LIABILITY. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

(48)

## CONDITIONS APPLYING TO SECTION I AND SECTION II

1. ASSIGNMENT.

Assignment of this policy shall not be valid unless **we** give **our** written consent.

2. CANCELLATION.

a. **You** may cancel this policy at any time by notifying **us** in writing of the date cancellation is to take effect. **We** may waive the requirement that the notice be in writing by confirming the date and time of cancellation to **you** in writing.

b. **We** may cancel this policy only for the reasons stated in this condition. **We** will notify **you** in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you**, or mailed to **you** at **your** last known mailing address shown on **our** records. Proof of mailing shall be sufficient proof of notice;

(1) when **you** have not paid the premium, **we** may cancel at any time by notifying **you** at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to **us** or **our** agent or under any finance or credit plan;

(2) when this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason by notifying **you** at least:

(a) 10 days before the date of cancellation for property located in Georgia; or

(b) at least 30 days for property located in Mississippi.

(3) when this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel for any reason allowed by the applicable law of

(49)

**We** may cancel this policy by notifying **you** in writing at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, premium refund will be based on **our** rules for such cancellation. The return premium may be less than a full pro-rata refund.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to **us**. In such cases, **we** will refund it within a reasonable time after the date cancellation takes effect.

## 3. AUTOMATIC TERMINATION.

If **we** offer to renew or continue **your** policy, it may be continued in force for successive policy periods by payment of the required premium. This policy will automatically terminate at the end of the current policy period if the required renewal premium is not paid by or for **you** and accepted by **us** on or before the expiration of the current policy period. Failure to pay the required renewal premium shall mean **you** have not accepted **our** offer.

## 4. NON-RENEWAL.

**We** may elect not to renew this policy. If **we** elect not to renew, a written notice will be delivered to **you**, or mailed to **you** at **your** last known mailing address shown on **our** records. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

## 5. CONCEALMENT, FRAUD OR MISREPRESENTATION.

This insurance is void in any case of fraud by an **insured** as it relates to this insurance at any time. It is also void if an **insured**, at any time conceals or misrepresents a material fact concerning:

a. application for this insurance;

b. this insurance;

c. the covered property;

(50)

d. an **insured's** interest in the covered property; or

e. a claim under this insurance.

## 6. WAIVER OR CHANGE OF POLICY PROVISIONS.

A waiver or change of any provision of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination shall not waive any of **our** rights.

## 7. INSURANCE UNDER TWO OR MORE COVERAGES OF THIS POLICY.

If two or more of this policy's coverages apply to the same loss or damage, **we** will not pay more than the actual amount of the loss or damage.

## 8. LEGAL ACTION AGAINST **US**

No person or organization has a right under this coverage:

a. to join **us** as a party or otherwise bring **us** into a **suit** asking for damages from an **insured**; or

b. to bring **suit** against **us** on this coverage unless all of its terms have been fully complied with.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of this coverage or that are in excess of the applicable Limits shown on the **Declaration**. An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

## 9. **OUR** RIGHT TO RECOVER **OUR** PAYMENT.

If **we** make payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right regardless of whether that person has been made whole. That person shall do whatever is necessary to enable **us** to exercise **our** rights and shall do nothing after loss to prejudice them.

If **we** made a payment under this policy and the

(51)

person to or for whom payment is made recovers damages from another, that person shall hold any proceeds of the recovery in trust for **us** and shall reimburse **us** to the extent of **our** payment, regardless of whether they are made whole.

This condition does not apply under SECTION II COVERAGE F—MEDICAL PAYMENTS TO OTHERS, ADDITIONAL COVERAGES or DAMAGE TO PROPERTY OF OTHERS.

### 10. POLICY PERIOD.

This policy applies only to losses under Section I, or **occurrences** under Section II, taking place during the policy period. No coverage shall be afforded for any loss occurring prior to the effective date and hour shown on the application for the policy.

### 11. CONFORMITY TO STATE LAW.

When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of that state will apply.

### 12. DEATH.

If any person named on the **Declarations** or the spouse, if a resident of the same household, dies:

   a. **we** insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. **insured** includes:

     (1) any member of **your** household who is an **insured** at the time of **your** death, but only while a resident of the **residence premises**; and

     (2) with respect to **your** property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

### 13. INSPECTION.

**You** shall permit **us** to inspect the **insured location** at any time during the policy period or while a claim is pending. **Our** inspection shall not be deemed to be for

health or safety purposes and is not intended for such purposes, nor is it intended to certify that the condition or operation complies with any law, rule or regulation.

### 14. LIBERALIZATION CLAUSE.

If **we** revise this policy to provide more coverage without additional premium **your** policy will automatically provide the additional coverage as of the day the revision is effective in **your** state.

### 15. BANKRUPTCY.

Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve **us** of **our** obligations under this policy.

This is a non-assessable policy.

H. Al Dan                    Jerry A. Newly

  Secretary                        President